REVISED, October 12, 1999

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 98-10060**

---

**WILLIAM JOSEPH KITCHENS,**

**Petitioner-Appellant,**

**VERSUS**

**GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT**
**OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,**

**Respondent-Appellee.**

---

Appeal from the United States District Court
For the Northern District of Texas

---

September 28, 1999

Before HIGGINBOTHAM, SMITH, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

William Joseph Kitchens ("Kitchens"), a Texas death-row inmate, appeals the district court's denial of his 28 U.S.C. § 2254 motion. The basic issue on appeal is whether Kitchens received effective assistance of counsel as guaranteed by the Sixth Amendment. The main point of contention is whether counsel properly investigated and presented mitigating evidence of child abuse, alcoholism, and mental illness. Having reviewed the record, and having considered the parties' arguments, we affirm the

district court's judgment.

                                    I.

In 1986 Kitchens was charged with capital murder in Taylor County, Texas, for the shooting death of Patti Webb. Two lawyers were appointed to defend Kitchens, Randy Dale and Jon McDurmitt ("counsel"). Kitchens ultimately pleaded guilty to murder, but proceeded to trial on the capital murder charge. After a trial that lasted roughly one week, the jury convicted Kitchens of the capital offense of intentional murder in the course of a robbery or sexual assault. In the subsequent penalty phase of the trial, the jury was asked to answer the two special sentencing issues required by Article 37.071(b) of the Texas Code of Criminal Procedure.[1] *See* Tex. Code Crim. P. art. 37.071. The jury answered each question in the affirmative, and the trial court sentenced Kitchens to death.

Kitchens appealed his conviction and sentence to the Texas Court of Criminal Appeals, which affirmed by published opinion of October 30, 1991. ***Kitchens v. State***, 823 S.W.2d 256 (Tex. Crim.

_____

[1]  The first special issue stated:

> Was the conduct of the defendant, WILLIAM JOSEPH KITCHENS, that caused the death of the deceased PATRICIA LEANN WEBB, committed deliberately and with the reasonable expectation that the death of the deceased or another would result?

The second special issue stated:

> Is there a probability that the defendant, WILLIAM JOSEPH KITCHENS, would commit criminal acts of violence that would constitute a continuing threat to society?

2

App. 1991). The United States Supreme Court denied Kitchens' subsequent petition for writ of certiorari on June 1, 1992. *Kitchens v. Texas*, 504 U.S. 958 (1992). On February 4, 1993, Kitchens filed an application for a state writ of habeas corpus. A two-day hearing was held by the state trial court, and on November 27, 1996, in an unpublished per curiam opinion, the Texas Court of Criminal Appeals adopted the trial court's findings of fact and conclusions of law and denied Kitchens' petition.

Kitchens next filed a petition for federal habeas corpus relief on September 2, 1997. The district court denied the petition on November 26, 1997, and denied Kitchens motion for a certificate of appealability ("COA") on May 18, 1998. This Court then granted a COA on two separate issues which now form the basis of the present appeal.

## II.

Kitchens filed his federal habeas corpus petition in September 1997, after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Thus, we must review his petition under the more stringent AEDPA standards. *Nobles v. Johnson*, 127 F.3d 409, 415 (5th Cir. 1997). The AEDPA provision that guides our review is 28 U.S.C. § 2254(d). It provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

3

>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). As this section is applied, questions of law and mixed questions of law and fact are reviewed under subsection (d)(1) of § 2254. *Drinkard v. Johnson*, 97 F.3d 751, 767-68 (5th Cir. 1996). For questions of law, this subsection permits a federal court to grant habeas corpus relief only if the state court decision rested on a legal determination that was "contrary to . . . clearly established federal law." 28 U.S.C. § 2254(d)(1); *Drinkard*, 97 F.3d at 767-68. For mixed questions of law and fact, subsection (d)(1) affords relief only if the state court decision rested on "an unreasonable application of clearly established federal law." 28 U.S.C. § 2254(d)(1); *Drinkard*, 97 F.3d at 767-68.

Questions of fact, on the other hand, are reviewed under subsection (d)(2) of § 2254. *Id.* at 767. That provision affords relief only if the state court adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d)(2); *Drinkard*, 97 F.3d at 767. Importantly, state factual findings are presumed correct unless rebutted by the petitioners with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Trevino v. Johnson*, 168 F.3d 173, 181 (5th Cir. 1999), *petition for cert. filed*, 68 U.S.L.W. ___ (U.S. June 17, 1999) (No. 98-9936).

4

## III.

We granted a certificate of appealability on two separate issues, each relating to whether Kitchens received effective assistance of counsel as guaranteed by the Sixth Amendment. The first is whether counsel adequately investigated and presented mitigating evidence of child abuse, alcoholism, and mental illness. The second is whether counsel gave an effective closing argument at both the guilt and penalty phases of trial.

### A.

We evaluate an ineffective assistance of counsel claim under the standard announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must show (1) that counsel's representa-tion was deficient, and (2) actual prejudice resulting from the deficient performance. *Strickland*, 466 U.S. at 687; *Earhart v. Johnson*, 132 F.3d 1062, 1066 (5th Cir. 1998). Because an ineffective assistance of counsel claim is a mixed question of law and fact, we look to whether the state court decision rested on "an unreasonable application of clearly established federal law." 28 U.S.C. § 2254(d)(1); *Drinkard*, 97 F.3d at 767-68. A state court's application of federal law is unreasonable when "reasonable jurists considering the question would be of one view that the state court ruling was incorrect." *Drinkard*, 97 F.3d at 769. With those standards in mind, we turn to the first issue in this appeal: whether counsel effectively investigated and presented mitigating evidence of child abuse, alcoholism, and mental illness.

5

B.

On appeal Kitchens maintains that his trial attorneys were ineffective by failing to investigate and present evidence that his father physically abused him as a child and forced him to consume alcohol at a very young age. Kitchens also contends that counsel failed to investigate and present hospital records indicating that Kitchens was hospitalized on numerous occasions for attempted suicide, depression, black outs, and hallucinations. Kitchens insists that had counsel properly uncovered this evidence and utilized it at trial, there would have been a reasonable probability that the jury would not have sentenced him to death.

In evaluating whether counsel's performance was deficient, we look to whether the challenged representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. However, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Thus, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997) (quotations and citation omitted). "We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *Id.*

In this case, the state trial court conducted a two-day hearing and concluded that counsel was not ineffective under *Strickland*. The court found that counsel's failure to present evidence of child abuse and early alcohol consumption was a strategic decision founded on the belief that the value of that evidence did not outweigh the risk that other damaging evidence would come into the record. In particular, counsel believed that evidence relating to Kitchens' childhood would have opened the door to evidence of drug use, as well as specific instances where Kitchens was violent even when sober. Similarly, the court concluded that counsel's decision not to present the hospital records was a strategic decision because the records also showed that Kitchens had repeatedly rejected alcohol-abuse treatment, and was a heavy drug user. The state trial court rejected the assertion that counsel's investigation was inadequate. The state court noted that his attorneys were aware of his childhood history, and interviewed several family members, but decided not to develop that evidence due to its double-edged quality.

When presented with Kitchens' claim of ineffective assistance of counsel, the federal district court found that the state court's findings were adequately supported by the record. The district court agreed that counsel's decisions were based on strategic concerns. Citing *Boyle v. Johnson*, 93 F.3d 180, 187-88 (5th Cir. 1996), the district court observed that the Fifth Circuit has repeatedly denied claims of ineffective assistance of counsel for failure to present "double edged" evidence where counsel has made

7

an informed decision not to present it. The district court also found that Kitchens' had not demonstrated the requisite prejudice under the second prong of **Strickland**.

On appeal Kitchens claims that the findings of the state court are contradicted by the record. He contends that counsel's failure to present evidence of his childhood could not have been a strategic decision to limit evidence of drug use and violence because counsel elicited testimony of that nature at trial. Similarly, Kitchens argues that counsel's failure to present the hospital records could not have been a reasoned decision because the reports did not reflect repeated terminations of treatment. As for the state court's finding that counsel conducted a reasonable investigation, Kitchens alleges that counsel took no steps to corroborate or investigate the evidence of child abuse and early alcohol consumption,[2] and took no steps to understand or use the hospital reports.[3] Having reviewed the record, we find no merit to

---

[2] As to the evidence of child abuse and early alcohol consumption, Kitchens argues that counsel initially received an investigator's report indicating that Kitchens' father routinely gave him whiskey when he was five years old, but counsel nevertheless failed to pursue or corroborate that information. Kitchens cites the fact that counsel never interviewed his father, only briefly interviewed his mother and one sibling, and never asked them about specific instances of abuse or violence. He asserts that had counsel conducted an adequate investigation they would have learned that Kitchens was physically abused by his father, was consuming alcohol by age three, and by age five was being forced by his father to drink several times a week.

[3] As to the hospital records, Kitchens points out that the hospital records, which were in the possession of counsel, indicated that he was treated on several occasions for extreme emotional illness that resulted in suicidal urges, black outs, and hallucinations. He maintains that the health records would have established "catastrophic levels of child abuse," resulting in a

8

Kitchens' claims.

The record shows that counsel was aware that Kitchens had been abused as a child and had consumed alcohol at a very early age.[4] The record, however, shows that counsel chose not to investigate that evidence further, and not present it at trial, because there were instances of extreme violence in Kitchens' past that counsel did not want brought to light.[5] *See* **Strickland**, 466 U.S. at 691 ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."). In fact, as argued by the state on appeal, a complete history of Kitchens' childhood would have revealed instances where Kitchens was violent even when sober. It is true, as Kitchens points out, that counsel did elicit some testimony at trial about Kitchens' problems with alcohol and his tendency to act violently when drunk. But counsel's use of that evidence was

_____

mental illness that lessened his criminal culpability. Kitchens claims that counsel's performance was deficient because counsel never contacted the treating physicians; never reviewed the reports with the assistance of medical professionals; never provided the reports to the two doctors who testified at the penalty phase hearing; and, most importantly, never sought to introduce the reports as mitigating evidence at trial.

[4] Counsel was made aware of this fact through the investigative report, from comments made by Kitchens, his mother, and his sister, and from various mentions in the hospital reports.

[5] There was evidence that Kitchens once hit his sister on the head with a piece of lumber; beat a cat to death while dragging it behind his bicycle; tied the tails of two cats together and hung them over a clothesline where they fought to death; and would stop in the middle of the street and fire a gun at the homes of those he did not like.

9

limited to that purpose. Counsel did not explore Kitchens' childhood and purposefully avoided opening the door to prior bad acts.

As for the hospital records, the facts of this case indicate that counsel decided not to use that evidence due to a concern that the jury would view those reports as evidence that Kitchens voluntarily terminated needed treatment. Although Kitchens is correct in that he only discontinued treatment on one or two occasions, he ignores the fact that counsel also did not want the jury to hear about Kitchens' extensive drug use, which was thoroughly documented in the hospital records.

We began our analysis with the presumption that the state court's factual findings are correct unless rebutted by Kitchens with clear and convincing evidence. Because Kitchens has failed to clear that hurtle, we cannot question the state court's finding that counsel's actions were the product of sound trial strategy. We note that Kitchens' claim is not that counsel utterly failed to investigate the evidence of child abuse, mental illness, and early alcohol consumption, or failed to present any mitigating evidence. That argument would fail because counsel did in fact conduct an investigation, and did in fact present some mitigating testimony at the penalty phase. Kitchens' argument essentially comes down to a matter of degrees. Did counsel investigate enough? Did counsel present enough mitigating evidence? Those questions are even less susceptible to judicial second-guessing.

Having reviewed the record in this case, we conclude that counsel's decisions were objectively reasonable based on the double-edged nature of the evidence involved. Accordingly, we leave undisturbed the state court's conclusion that counsel's performance was not deficient under *Strickland*. *See Boyle v. Johnson*, 93 F.3d 180 (5th Cir. 1996) (noting the heavy deference owed trial counsel when deciding as a strategical matter to forego admitting evidence of a double-edged nature" which might harm the defendant's case); *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) ("A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.").

Additionally, even if counsel's performance was deficient, relief is not warranted in this case because there is scant evidence that Kitchens suffered actual prejudice. On appeal Kitchens contends that the mitigating evidence would have swayed the jury by lessening his culpability. That argument is unconvincing. If counsel had attempted to lessen Kitchens' culpability by introducing evidence of his childhood, there is the very real risk that the state would have countered with evidence of other violent acts, some committed while sober. Similarly, if counsel had introduced the hospital records, the jury may have better understood his mental state, but would have seen a long

11

history of drug and alcohol abuse. Thus, given the double-edged nature of this evidence, it is hard to conclude that it would have aided Kitchens' cause.

Accordingly, even if we find that counsel's performance was deficient under *Strickland*, Kitchens has failed to establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Absent that showing of actual prejudice, we cannot grant relief.

B.

Kitchens also argues that counsel was ineffective by referring to the crime as "brutal" and "savage" in closing argument at the guilt phase of trial. He insists that those references effectively suggested a "yes" answer to the special issue on future dangerousness which was put to the jury in the subsequent penalty phase. We disagree.

Each of Kitchens' two attorneys gave a closing argument at the guilt phase of trial. Dale's closing argument was aimed at convincing the jury that Kitchens' crime was murder, but not capital murder. He argued at length that the state had not proven that the murder was conducted in the course of a robbery, sexual assault, or kidnaping, the aggravating offenses which raised the crime to capital murder. He then closed with the following remarks:

> [T]his is not a capital murder case. This is
> a very brutal, a very savage murder, but this

12

is not a capital murder case by which Joe Kitchens needs to be put on death row. I ask you that after you weigh the evidence, you apply it to the law as contained in the Court's charge. I think you will agree with me that this is not a capital case, and the only thing this boy is guilty of is a brutal, brutal murder. He does not deserve to be put on death row for what he has done. The law provides a punishment for what he's done. And we're going to expect you to punish him for what he's done, but he is--does not belong on death row. And I ask that you re-enforce [sic] your feelings by your verdict of "not guilty" to capital murder. Thank you.

Viewed in context, it is clear that Dale characterized the murder as brutal and savage in an effort to bolster his credibility with the jury. It was thus a strategic decision we will not second guess. *See* ***Carter v. Johnson***, 131 F.3d 452, 466 (5th Cir. 1997) ("counsel may make strategic decisions to acknowledge the defendant's culpability and may even concede that the jury would be justified in imposing the death penalty, in order to establish credibility with the jury").[6]

Kitchens next contends that counsel's closing argument at the penalty phase of trial was deficient because it was no more than a simple plea for mercy based on the Bible. He cites ***Hall v. Washington***, 106 F.3d 742 (7th Cir. 1997), a Seventh Circuit case, in support of his claim that counsel was required to base his closing argument on the particular facts of the case. Kitchens' argument is not persuasive.

In this case, the state trial court made an express finding

---

[6] Even if Dale's word choice was ill-considered, we seriously doubt that this fleeting reference resulted in actual prejudice at the subsequent penalty phase of the trial.

that Kitchens' attorneys decided that a basic plea for mercy would be the most effective approach given the religious makeup of the jury. The state trial court observed:

> Petitioner's attorneys, being aware of the evidence that Petitioner's family was extremely poor and was dysfunctional, and that the father was physically abusive to the children and their mother and to property, made a deliberate decision not to present this evidence since it would involve evidence that Petitioner was violent when sober and especially when drinking. Considering the religious community of the Jury, counsel's strategy at punishment was: (1) to seek mercy and forgiveness of the Petitioner, and (2) to persuade the Jury to answer "no" to Special Issue No. 2. Counsel did not think the evidence was favorable since it also showed Petitioner was violent.

Kitchens has not rebutted the finding that counsel's closing was based on strategic concerns. Thus, the question before us is whether the strategy was reasonable given the circumstances of this case. *See* **United States v. Green**, 882 F.2d 999, 1002-03 (5th Cir. 1989). Counsel is afforded significant latitude in this regard. **Jones v. Jones**, 163 F.3d 285, 300 (5th Cir. 1998).

After reviewing the record, we cannot conclude that counsel's closing argument was unreasonably deficient. It is true, as Kitchens points out, that counsel's closing argument was little more than a plea to the religious morals of the jury. But given the double-edged nature of the underlying evidence, we cannot say that counsel's strategy was objectively unreasonable. As for Kitchens' reliance on **Hall**, we would only note that **Hall** is not binding precedent in this Circuit, and is distinguishable given the facts of this case.

14

Finally, we note that Kitchens' has not demonstrated actual prejudice resulting from counsel's closing argument. It is possible, of course, that a fact-based argument focusing on Kitchens' childhood, alcoholism, and drug use, may have been more effective than a simple plea for mercy. Yet, it is equally possible that such evidence would have only served to inflame the jury. Accordingly, we find insufficient evidence of actual prejudice.

## IV.

Based on the foregoing, we conclude that the district court did not err in denying Kitchens' habeas corpus petition. The judgment of the district court is affirmed.