United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 7, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-21210

STEPHEN LINDSEY MOODY,

Petitioner - Appellant,

versus

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT
OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent - Appellee.

Appeal from the United States District Court
for the Southern District of Texas, Houston
(H-00-CV-1450)

Before JONES, STEWART, and DENNIS, Circuit Judges.

CARL E. STEWART, Circuit Judge:[*]

Petitioner-Appellant Stephen Moody ("Moody") was convicted of capital murder and

sentenced to death for the 1991 murder of Joseph Hall ("Hall"). He now applies for a certificate of

appealability ("COA") on four issues as part of a petition for habeas corpus relief under 28 U.S.C.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

§2254 based upon ineffective assistance of counsel. We deny Moody's request for a certificate of appealability on each contested issue.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY

The evidence adduced at trial established the following sequence of events. In late September of 1991, Moody and his co-defendant, Calvin Doby ("Doby") drove from Houston to Dayton, Texas while accompanied by Melvin Ellis ("Ellis") and Lloyd Larrieu ("Larrieu"). As the prosecution's star witness, Ellis testified that, while en route, Doby asked Larrieu from whom Larrieu was getting his drugs, because Doby wanted to rob the individual. In response, Larrieu provided Doby with the name and whereabouts of Hall. According to Ellis, Moody did not participate in the conversation.

On October 19, 1991, the day of the murder, Ellis, Doby, and Larrieu drove to Hall's residence where Larrieu pointed out Hall's house and answered Doby's questions regarding the whereabouts of Hall's drugs and money. Larrieu informed Doby that Hall lived with his girlfriend, Rene McKeage ("McKeage"), kept his money in his pocket, and that Doby would know if Hall was home by the Camaro in the driveway. Doby immediately contacted Moody by telephone and the two of them met at Ellis' residence an hour and half later. Moody and Doby then went to Hall's residence and murdered him with a shotgun blast to the chest. The Court of Criminal Appeals summarized the facts of the murder as follows:

> On the evening of [the murder], McKeage and Hall [were returning home from dinner] when McKeage noticed two unknown men walking on the street away from the front of their house...[Upon entering their residence,] Rene was sitting in the bathroom when she heard Hall talking on the phone and then "somebody come rush in the house." She heard Hall yell out her name and then heard another man's voice screaming "Where is the money?" Rene stayed in the bathroom. She initially thought that it was the police because of the drugs that were in the house. She heard Hall say, "You're not the cops. Let me see your badges." Rene then heard some scuffling, and

2

[Moody] walked into the bathroom and said, "stay there. Don't move." [Moody] was pointing a sawed-off shotgun at Rene.

[Moody] left the bathroom and Rene heard him again ask Hall, "where is the money?" Hall said the money was in his pocket, and he asked [Moody], "Please don't shoot me."

[Moody] returned to the bathroom, and he again said to Rene, "Stay there, don't move." Rene said, "Okay, I won't move," and [Moody] shut the bathroom door. Rene then jumped out of the bathroom window, jumped the fence in the backyard, and ran to the next-door residence of Arthur Jesse Flores. During this time, she heard a gunshot come from inside the house. When Rene entered Mr. Flores' residence, she said that someone had shot Hall, and she called 911. Ms. Juarez and Ms. Chavez also heard the gunshot and a scream, and saw two men walk out of the residence and back down the street.

Following the murder, Doby and Moody returned to Ellis' residence forty-five minutes later and admitted to him that they murdered Hall. Ellis testified that Doby confessed, "Man, we had some trouble over there,...we had to kill him." Moody then responded, "Man, you know I didn't - that I had to do it," to which Doby replied, "Man don't worry. Shit happens." Ellis asked the appellant if the man was dead, and the appellant said, "Yeah, I shot him right in the heart." Ellis also testified that upon the departure of Moody and Doby, he noticed the stock of a shotgun in the vehicle on the passenger's side where the appellant was sitting.

Moody was indicted on October 6, 1992 for capital murder under Texas Penal Code §19.03(a) (7) (A). Following a jury trial, Moody was convicted and sentenced to death in March 1993. In 1996, the Texas Court of Criminal Appeals upheld Moody's conviction and sentence on direct appeal. See Moody v. State, No. 71687 (Tex. Crim. App. 1996). Moody did not seek certiorari review in the Supreme Court. In June 1997, Moody filed an application for a writ of habeas corpus in state court. On August 19, 1999, the state habeas court entered findings of fact and

3

conclusions of law denying him relief. The Texas Court of Criminal Appeals affirmed his conviction and sentence. See Ex Parte Stephen Lindsey Moody, No. 42832-01 (Tex. Crim. App. 1999).

On May 1, 2000, Moody filed his federal petition for a writ of habeas corpus in the district court claiming that the State violated his equal protection rights by exercising a peremptory challenge based on a prospective juror's race and that his trial counsel rendered ineffective assistance of counsel by failing to call Larrieu as a witness at trial and by failing to present mitigating evidence at the punishment phase of his trial. On September 30, 2002, the district court rendered a final judgment denying *sua sponte* a COA regarding Moody's ineffective assistance of counsel claims and provisionally granted Moody's petition for a writ of habeas corpus with regards to his Batson claim.[2] On appeal, Moody seeks a COA from this court solely on his claim that his counsel rendered ineffective assistance of counsel by failing to call Larrieu as a witness.

### STANDARD OF REVIEW

Moody filed his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Lindh v. Murphy, 521 U.S. 320, 326-27 (1997); Robertson v. Cockrell, 325 F.3d 243, 247 (2003) (stating that the AEDPA applies to all cases pending as of April 24, 1996). Under AEDPA, Moody must obtain a COA before he may receive full appellate review of the district court's denial of his request for habeas relief. 28 U.S.C. § 2253 (c) (1) (A) (2000) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by the State court.").

---

[2] Under Batson v. Kentucky, 476 U.S. 79 (1986), the State violates the equal protection clause when it challenges potential jurors solely on the basis of race.

4

Under an application for a COA, an applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In seeking a COA, the applicant will not succeed unless there is a showing of "something more than the absence of frivolity or the existence of mere good faith." Miller-El v. Cockrell, 123 S. Ct. 1029, 1040 (2003); quoting, Barefoot v. Estelle, 463 U.S. 880, 893 (1983). To prevail, the petitioner "must demonstrate that reasonable jurists would find that the district court's assessment of the constitutional claims debatable or wrong." Miller-El, 123 S. Ct. at 1040; quoting, Slack v. McDaniel, 529 U.S. 473, 484 (2000). Indeed, the ultimate determination turns on "the debatability of the underlying constitutional claim, not the resolution of the debate." Henry v. Cockrell, 327 F.3d 429, 431 (5th Cir. 2003).

Our review of whether Moody makes a substantial showing of a violation of a constitutional right is also constrained by the applicable AEDPA standards of review. Moore v. Johnson, 225 F.3d 495, 501 (5th Cir. 2000), cert. denied, 532 U.S. 949 (2001). On questions of law, the state court's conclusions will be disturbed only upon a showing that they were "contrary to, or an unreasonable application of, clearly established" Supreme Court precedent. 28 U.S.C. § 2254 (d) (1). Furthermore, state court findings of fact are presumed correct unless the petitioner rebuts them by clear and convincing evidence. Id. § 2254 (e) (1).

## DISCUSSION

In order to show a deprivation of his Sixth Amendment right to effective assistance of counsel, the Applicant must show: (1) that his counsel's representation was deficient, and (2) actual prejudice resulting from the deficient performance. See Kitchens v. Johnson, 190 F.3d 698, 701 (5th Cir. 1999). In evaluating whether counsel's performance was deficient, we look to whether the challenged representation fell below an objective standard of professional norms. Id. To prove

5

prejudice, Moody must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 703. As articulated by the U.S. Supreme Court, the fundamental inquiry courts must follow in making their determination in an ineffective assistance of counsel claim is whether counsel's conduct so undermined the proper functioning of the adversary process that the trial cannot be relied upon as having produced a just result. Strickland v. Washington, 466 U.S. 668, 687 (1984).

A.    Deficient Performance

Relying in part on Moody's counsel's affidavit, the state habeas court found that the performance rendered by Moody's counsel was not deficient. The relevant portion of the affidavit is as follows:

> I was aware of Lloyd Larrieu and Melvin Ellis prior to trial and I was aware of Ellis' intended testimony. During my many conversations with the defendant, he never told me that Larrieu could or would give testimony to support the defendant's claim that he did not do the shooting. *We tried to find Larrieu and were not able to find him.* However, I did not consider Larrieu's testimony as critical, because, even if Larrieu denied talking to Doby, it would not address the issue of the defendant's and Doby's admissions to Ellis.
>
> The statements Calvin Doby made to Lloyd Larrieu concerning the intended offense did not inculpate the defendant. My concern was the statements which Doby and the defendant made to Marvin Ellis outside of Larrieu's presence. In other words, even if Larrieu testified that he didn't give Doby information about his drug dealer; and, that Larrieu did not drive past the victim's house with Ellis and Doby, it would have had little, if any, impact on the entirety of Ellis' prejudicial testimony concerning the defendant's and Doby's admissions. As a matter of strategy, I wanted to impeach the reliability of all identification testimony and impeach Ellis' admissions. Viewed strategically, it is likely that a juror would view Larrieu as less credible than Ellis because Ellis presented plausible altruistic reasons for reporting a crime and, based on Larrieu's affidavit, Larrieu would just deny talking to Doby, driving to Dayton, and driving past the victim's house and Larrieu would have to admit that he knew nothing about the shooting itself.

Moody v. State, slip op. at 1-3.

6

The state habeas court found that Moody's counsel "attempted to locate Larrieu" and "made a reasonable, strategic decision to attempt to impeach Melvin Ellis with Ellis' possible bias and motive for testifying and to attack identification." The district court accepted the state habeas court's finding that Moody's counsel attempted to locate Larrieu. The district court highlighted the fact that Moody attempted to locate Larrieu despite the fact that Moody did not tell him that Larrieu would have provided material testimony.

Moody argues that the state court's finding that his counsel attempted to locate Larrieu should not be given deference because it "was not reasonable for the court to infer that trial counsel's attempts to locate Larrieu - whatever they might have been - fell within the wide range of responsible professional performance." The district court held that trial counsel's unrebutted affidavit regarding his efforts to locate Larrieu for trial supported the state court's rejection of Moody's ineffective assistance of counsel claim. "Counsel for a criminal defendant is not required to pursue every path until it bears fruit or until all conceivable hope withers." Lovett v. State of Florida, 627 F.2d 706, 708 (5th Cir. 1980), see also, Bryant v. Scott, 28 F.3d 1411 (5th Cir. 1994). Although the record fails to show what actions trial counsel took to locate Larrieu, this void does not establish that the state court determination was contrary to, or an unreasonable application of federal law. Even if Moody had established deficient performance, his claim was destined for failure.

B.    Prejudice

The state habeas court further held that Moody's counsel's failure to call Larrieu as a witness did not prejudice Moody's defense. The district court also held that no prejudice resulted from Moody's counsel's failure to call Larrieu as a witness.

7

Moody argues that his counsel's failure to call Larrieu prejudiced his defense because Larrieu's testimony would have rebutted Ellis' testimony regarding the planning of the crime. Moody points to Larrieu's affidavit in which Larrieu stated that: (1) he had never been acquainted with Joseph Hall; (2) he never drove with Ellis, Doby, or Moody to Houston; (3) he never spoke with Doby about Hall, either in or out of the presence of Moody or Ellis; and (4) he would have testified as to those facts on Moody's behalf had he been contacted by Moody's counsel. Although Larrieu's testimony would have rebutted Ellis' testimony regarding the planning of the crime, Moody's counsel's failure to call Larrieu did not prejudice Moody's defense. As the district court stated, Larrieu's affidavit "only calls into question the manner in which [] Doby and Moody chose their victim, it does not question their identity as the killers." Moody's counsel stated that he was concerned with the "incriminating statements made by Moody and Doby to Ellis outside of Larrieu's presence, not the statements made in Larrieu's presence."

Moody further argues that his counsel's failure to call Larrieu prejudiced his defense because Larrieu's testimony would have undermined the jury's confidence in the identification of him as the killer and thus, the confidence in the outcome of the proceedings against him. Moody contends that Ellis' and McKeage's testimony was compromised. Specifically, Moody argues that Ellis was psychotic, received immunity, and was a former drug user. As for McKeage, Moody highlights the fact that: (1) her identification of him as the killer was less than definite; (2) she was a drug abuser; (3) she broke into the scene of the crime with her companions looking for drugs and money following Hall's murder; (4) and that she made out with one of her companions at the scene of the crime.

Our review of Larrieu's affidavit and the state habeas court's review of Larrieu's testimony at Doby's trial reveals that Larrieu's testimony would not have undermined the jury's confidence of

8

Moody as the killer because Larrieu would not have testified as to the facts surrounding the murder of Hall.[3]  Moreover, Larrieu's credibility would have been called into question because of his extensive criminal history.[4]  On this issue, the state habeas court rejected as speculative "[Moody's] assertion that Larrieu's and Ellis' background[s] were equally bad so it [is]likely that the jury would have found Larrieu just as credible as Ellis."  It should also be noted that Moody's counsel unsuccessfully attempted to impeach the reliability of all of the identification testimony, including Ellis' and McKeage's.

The state habeas court further found that Moody corroborated Ellis' testimony. As Moody's counsel stated:

> [D]uring the testimony of Melvin Ellis, the defendant made an audible outburst in front of the jury which it was obvious that the jury heard.  When Ellis testified that Charles Doby and the defendant left Ellis $100 of the stolen money after splitting the money at Ellis' house, the defendant told me that "he's a lying son of a bitch, he got $900."

---

[3]  Moody asserts that the state habeas court denied him relief because Larrieu's testimony at Doby's trial resulted in a guilty verdict.  Although the state habeas court reviewed Larrieu's testimony from Doby's trial, it did not base its prejudice finding on the fact that Doby was ultimately convicted.

[4]  The trial court found, during the punishment phase of the subsequent trial of the applicant's co-defendant Calvin Charles Doby, Lloyd Larrieu admitted during cross-examination that he used names other than Lloyd Larrieu; that he was convicted of burglary of a building in 1958; that he committed theft during the offense and was sentenced to eight years in prison; that he was convicted of burglary of a building with the intent to commit theft in 1964 and sentenced to four years in prison; that he was convicted of breaking into an auto in 1968 and sentenced to two years in prison; that he was convicted of burglary of a habitation in 1976 and was sentenced to twenty years in prison; that he was indicted as an habitual criminal in the 1976 offense which means an automatic possibility of a life sentence; that he was convicted of possession of a controlled substance in 1984 and sentenced to two years in prison; that he was convicted of unauthorized use of a motor vehicle in 1988 and sentenced to fifteen years in prison; that he was convicted of the federal offense of theft of U.S. mail in 1991 and sentenced to eighteen months in federal prison; and, that he violated his subsequent parole and was incarcerated in federal prison at the time of his testimony. (CD. VII - 807-15).

9

To the district court this outburst "only validated the fact that Moody killed the victim, robbed the house, and brought the proceeds to Mr. Ellis' house."

Finally, the state habeas court noted that the identification of Moody as the shooter and the elements of the primary offense were established by other evidence, including the testimony of Josephine G. Juarez, Eduardo Bellas, and Ray Klein. Moody contends that the state habeas court incorrectly utilized the sufficiency of the evidence test in determining whether trial counsel's performance prejudiced him. Although Moody correctly asserts that the "sufficiency of the evidence" standard is inapplicable in analyzing the existence of prejudice under Strickland, his argument fails because the state habeas court did not solely base its prejudice determination on the fact that other witnesses identified him as Hall's killer. See Johnson v. Scott, 68 F.3d 106, 109-10 (5th Cir. 1995) (holding that sufficiency of the evidence analysis in evaluating whether prejudice resulted from an attorney's actions does not comport with the Strickland prejudice standard).

Assuming *arguendo* that Moody's assertion that the state habeas court utilized the incorrect prejudice standard is correct, it is clear that a proper application of the prejudice standard to Moody's case still results in a finding that Moody was not prejudiced by his counsel's failure to call Larrieu as a witness. Moody's counsel made a strategic decision to impeach Ellis' testimony that identified Moody as the shooter. In his view, Larrieu's testimony would have only discredited Ellis' testimony regarding the planning of the crime, not Ellis' testimony regarding the actual shooting. Stated differently, "[e]ven if Larrieu testified, it would not have had any impact on the Ellis' prejudicial testimony concerning Moody's and Doby's admissions." Thus, there is "no reasonable probability that the result of the proceedings would have been different" if Larrieu was called as a witness. Kitchens, 190 F.3d at 703. As a result, Moody failed to show that "the district court's assessment

10

of his constitutional claim was debatable or wrong."  Accordingly, we deny Moody's request for COA on this issue.

## CONCLUSION

As Moody's counsel's performance did not prejudice Moody's defense, we deny his request for a COA on his ineffective assistance of counsel claim.

DENIED.