Kevin A. CONNER, Petitioner,

v.

Ron ANDERSON, Superintendent, Respondent.

IP 99–1023–C–B/S.

United States District Court, S.D. Indiana, Indianapolis Division.

Jan. 15, 2003.

Kathy Lea Stinton–Glen, Attorney at Law, Linda M. Wagoner, Attorney at Law, Indianapolis, IN, for Plaintiff.

Timothy W. Beam, Deputy Attorney General, Indianapolis, IN, for Defendant.

## ENTRY DISCUSSING PETITION FOR WRIT OF HABEAS CORPUS

BARKER, District Judge.

Kevin Conner was convicted in an Indiana state court for the murders of Anthony Moore, Bruce Voge, and Steve Wentland. He was sentenced to death for the murders of Moore and Voge, and to a term of 60 years for the murder of Wentland.

Conner now seeks a writ of habeas corpus. For the reasons explained in this Entry, his petition must be **denied**.

### I.

Conner's convictions were affirmed on direct appeal in *Conner v. State,* 580 N.E.2d 214, 217 (Ind.1991)(*Conner I*). The trial court's subsequent denial of Conner's petition for post-conviction relief was affirmed on appeal in *Conner v. State,* 711 N.E.2d 1238 (Ind.1999) (*Conner II*).

### II.

### A.

In the exercise of its habeas jurisdiction, a federal court may grant relief only if the petitioner shows that he is in custody "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a).

When a habeas petition is filed after enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) on April 24, 1996, that Act's restrictions on federal review of state court rulings apply to the case. *See Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Henderson v. Walls,* 296 F.3d 541, 545 (7th Cir.2002).

Under the AEDPA, a federal court may not grant a writ of habeas corpus to a state prisoner with respect to any claim adjudicated on the merits unless (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." § 2254(d)(2). A state court's legal decision is "contrary to" clearly established federal law under § 2254(d)(1) "if the court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. at 412–13, 120 S.Ct. 1495. An "unreasonable application" occurs when "the state court identified the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Under this standard, a state decision is not un-

reasonable simply because the federal court concludes that the state decision is erroneous or incorrect. *Id.* at 411, 120 S.Ct. 1495. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. *Id.* at 410–12, 120 S.Ct. 1495.

■ The deferential standard just described, however, only applies to claims which the Indiana courts adjudicated on their merits. *See Ouska v. Cahill–Masching,* 246 F.3d 1036, 1046 (7th Cir.2001); *Braun v. Powell,* 227 F.3d 908, 916–17 (7th Cir.2000). In the context of federal habeas proceedings, adjudication "on the merits" is a term of art that refers to whether a court's disposition of the case was substantive as opposed to procedural. *Green v. Johnson,* 116 F.3d 1115, 1121 (5th Cir. 1997).

■ With respect to the review permitted pursuant to § 2254(d)(2), factual issues determined by a state court are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *Werts v. Vaughn,* 228 F.3d 178, 196 (3d Cir.2000) (*citing* 28 U.S.C. § 2254(e)(1)). This is a "rigorous burden of proof." *Sanchez v. Gilmore,* 189 F.3d 619, 623 (7th Cir.1999). *See also Green v. White,* 232 F.3d 671, 672 n. 3 (9th Cir.2000) (although "the relationship between § 2254(d)(2) and § 2254(e)(1) is not entirely clear ... the standard of review appears to be clear error under both statutory provisions.").

**B.**

■ In addition to the substantive standard set out above, "habeas corpus has its own peculiar set of hurdles a petitioner must clear before his claim is properly presented to the district court." *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 14, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992) (O'Connor, J., dissenting) (internal citations omitted).

"It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas. Claims not so raised are considered defaulted." *Breard v. Greene,* 523 U.S. 371, 375, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998) (citing *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). The purpose of the rule of procedural default is to "afford[ ] to the state courts an opportunity to correct a constitutional violation." *Duckworth v. Serrano,* 454 U.S. 1, 4, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981).

Before a federal court will consider a habeas petition, a petitioner must satisfy several procedural requirements. First, a petitioner must exhaust state remedies—that is, give the state's highest court an opportunity to address each claim. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 839, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Wilson v. Briley,* 243 F.3d 325, 327 (7th Cir.2001). To satisfy this requirement, a petitioner must present to the state judiciary both the operative facts and legal principles that control each claim. *See Wilson,* 243 F.3d at 327. Second, the petitioner must comply with state rules to avoid procedurally defaulting his claims. *See Boerckel v. O'Sullivan,* 135 F.3d 1194, 1196–97 (7th Cir.1998), *rev'd. on other grounds by O'Sullivan v. Boerckel,* 526 U.S. 838, 849, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

*Mahaffey v. Schomig,* 294 F.3d 907, 914–15 (7th Cir.2002).

■ Exhaustion, or more specifically, non-exhaustion, is not an issue in this action, but procedural default is a facet of certain of Conner's habeas claims. Procedural default occurs either: (1) when a petitioner failed to exhaust state remedies and the court to which he would have been permitted to present his claims would now

find such claims procedurally barred, *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); or (2) "if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.,* at 729, 111 S.Ct. 2546; *see also Williams v. Parke,* 133 F.3d 971, 973 (7th Cir.1997); *Aliwoli v. Gilmore,* 127 F.3d 632, 634 (7th Cir.1997). A state procedural rule is "adequate" only if it is "firmly established and regularly followed" at the time the alleged procedural default occurred. *Ford v. Georgia,* 498 U.S. 411, 423–24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991).

▪▪▪ Insofar as pertinent here, the following parameters are recognized under Indiana law with respect to the need to present issues in a direct appeal and the consequence of failing to do so.

> A post-conviction relief proceeding is not a substitute for trial and appeal, but is a process for raising issues that were unknown or not available at trial. *Davidson v. State,* 763 N.E.2d 441, 443 (Ind. 2002). If an issue was available on direct appeal but not litigated, it is deemed waived. *Madden v. State,* 656 N.E.2d 524, 526 (Ind.Ct.App.1995). However, waiver of an issue may be avoided if the failure to present an issue on direct appeal was due to the ineffectiveness of appellate counsel. *Sharp v. State,* 684 N.E.2d 544, 546 (Ind.Ct.App. 1997), *trans. denied* 690 N.E.2d 1187 (Ind.1997).

*Smith v. State,* 774 N.E.2d 1021, 1022 (Ind. Ct.App.2002). *See also Lane v. Richards,* 957 F.2d 363, 366 (7th Cir.) (issues were not presented on direct appeal and relief would be barred by procedural default), *cert. denied,* 506 U.S. 842, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992). It has recently been emphasized that for the Indiana state courts to engage in appellate review of a claim under the doctrine of fundamental error in an action for post-conviction relief,

> any issue set forth in a post-conviction petition must be raised within the purview of the post-conviction rules, e.g., deprivation of the Sixth Amendment right to effective assistance of counsel, or [as] an issue demonstrably unavailable to the petitioner at the time of his trial and direct appeal. Therefore, in a post-conviction petition an allegation of the denial of the petitioner's due process rights may not be raised in the "free standing" form of an allegation of fundamental error.

*Woodson v. State,* 778 N.E.2d 475, 478 (Ind.Ct.App.2002) (on petition for rehearing).

▪▪▪ With respect to the rules concerning the doctrine of procedural default and the inclusion of claims in a post-conviction action, the rule in Indiana is this: "In seeking post-conviction relief, a petitioner must assert all available grounds for relief in his original post-conviction petition." *Kirk v. State,* 632 N.E.2d 776 (Ind.Ct.App. 1994) (citing Indiana's post-conviction Rule 1(8)).

▪▪▪ The consequence of presenting in a federal habeas petition a claim which has been procedurally defaulted is quite clear:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. "Cause" for a procedural default exists if

the petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Prejudice is demonstrated by showing that the errors worked to the petitioner's "actual and substantial disadvantage." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). The Supreme Court has equated the miscarriage of justice standard with a claim of actual innocence. *See Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). And, in order to establish a claim of actual innocence "[t]he prisoner must 'show a fair probability that in light of all the evidence [including that which was illegally obtained as well as that which was legally excluded] ... the trier of facts would have entertained a reasonable doubt of his guilt.'" *Kuhlmann v. Wilson,* 477 U.S. 436, 455 n. 17, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) (quoting Henry J. Friendly, **Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,** 38 U. Chi. L.Rev. 142, 160 (1970)).

### III.

### A.

Conner was charged in Marion County with the murders of Anthony Moore, Bruce Voge, and Steven Wentland. The State sought the imposition of the death penalty as to the murder of Bruce Voge, because Conner had committed the murder of Steven Wentland and had committed the murder of Anthony Moore, and as to the murder of Anthony Moore, because Conner had committed the murder of Steven Wentland.

Counsel were appointed for Conner, who was arrested in Texas on January 30, 1988, and various pretrial proceedings ensued. After a trial by jury from October 3, 1988, through October 7, 1988, Conner was con-

victed of each of the murders with which he had been charged. A hearing on the penalty phase commenced on October 9, 1988, and concluded that same day, with the jury recommending death as had been sought by the State. At a sentencing hearing held on November 3, 1988, Conner was sentenced to death for the murders of Voge and Moore, and was sentenced to a term of sixty (60) years for the murder of Wentland.

Conner's challenges to his convictions and sentences were addressed by the Indiana state courts in the manner described in Part I of this Entry.

### B.

The evidence at trial favorable to the jury's verdict showed the following:

[D]uring the early morning hours of January 26, 1988, Conner, Tony Moore, Bruce Voge, and Steve Wentland were drinking in Tony Moore's house. Bruce Voge remained at the house while Conner, Moore, and Wentland went for a drive in Wentland's automobile. Wentland drove with Moore in the passenger seat and Conner in the back. During the drive, an argument began which resulted in Moore striking Wentland with Conner's knife, causing Wentland to abandon the car and run. Conner, armed with the knife, pursued Wentland on foot while Moore took over the driving of the car and ran Wentland down. While Wentland was down, Conner struck him several times with his fists and stabbed him multiple times with the knife, killing him.

Conner and Moore drove from the scene and went to City Enterprises, Conner's place of employment. There, they woke up Conner's employer and were allowed access to the warehouse area. They began arguing about what had occurred and what future course of

action to take and, during the argument, Conner, who had obtained possession of his sawed-off shotgun, shot and killed Moore. The shotgun blasts awakened Conner's employer who confronted Conner as he left the warehouse area. Conner told his employer that he "had to off Tony." Conner left the warehouse and returned to Tony Moore's house where he shot and killed Bruce Voge while Voge was lying on the couch in the living room.

Following these three killings, Conner enlisted the help of various friends to dispose of Moore's body, abandon Wentland's automobile, and leave town. He was apprehended in Texas and returned to Indiana to face charges of murder. *Conner I*, 580 N.E.2d at 217.

### C.

Conner's claims in his habeas corpus petition are the following:

(1) he was denied the effective assistance of counsel during the guilt, penalty, and sentencing phases of his trial;

(2) he was denied the effective assistance of counsel in his direct appeal;

(3) the trial court improperly admitted his confession;

(4) the trial court improperly instructed the jury;

(5) a bailiff had improper *ex parte* communication with the jury;

(6) the post-conviction court improperly excluded evidence;

(7) Indiana's death penalty statute is unconstitutional;

(8) the trial court improperly denied funds for a polygraph examination;

(9) the sentence is improper;

(10) the State failed to disclose exculpatory evidence; and

(11) the cumulative effects of these errors denied him a fair trial and sentence.

Certain of these claims have been withdrawn in full or in part, which will be specifically noted in Part IV of this Entry.

### IV.

### A.

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." *Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The purpose of the right is to ensure a fair trial, and the benchmark for judging any claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. 2052.

 To support an ineffective assistance of counsel claim under *Strickland,* Conner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Id.* at 695, 104 S.Ct. 2052. A failure to establish either prong would result in a denial of Conner's claim. *See Rastafari v. Anderson,* 278 F.3d 673, 688 (7th Cir.2002). "In a capital case, the two-prong *Strickland* analysis is applied at both the guilt and penalty phase." *Fugate v. Head,* 261 F.3d 1206, 1216 (11th Cir.2001) (citing *Mincey v. Head,* 206 F.3d 1106, 1142 (11th Cir.2000)); *Chandler v. Moore,* 240 F.3d 907, 917 (11th Cir.2001) ("This two-pronged test is also applied to the sentencing phase because the capital sentencing proceeding is similar to a trial in its adversarial format and counsel's role is similar.").

 The first prong is satisfied by a showing that counsel's performance fell below the "objective standard of reasonableness" guaranteed under the Sixth Amendment. *Barker v. United States,* 7 F.3d

629, 633 (7th Cir.1993) (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052). In evaluating whether counsel's performance was deficient, "the court must defer to counsel's tactical decisions," avoid "the distorting effects of hindsight" and give counsel the benefit of a strong presumption of reasonableness. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Holman v. Gilmore,* 126 F.3d 876, 881–82 (7th Cir.1997). The prejudice prong of *Strickland* requires petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 679, 104 S.Ct. 2052. Under *Strickland,* a habeas petitioner is required to demonstrate how specific errors undermined the reliability of the guilt-determination process. *See United States v. Cronic,* 466 U.S. 648, 659 n. 26, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

In *Conner II,* the Indiana Supreme Court recognized the *Strickland* standard in evaluating Conner's contentions that he had been denied the effective assistance of counsel. There was no portion of the decisions of the Indiana Supreme Court in Conner's cases which "appl[ied] a rule that contradicts the governing law ... [or made] a decision that involve[d] a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result." *Williams,* 529 U.S. at 405–06, 120 S.Ct. 1495. Accordingly, (1) AEDPA's deferential standard applies to each of the specifications of deficient performance by Conner's counsel which are challenged in this case, and (2) the "contrary to" prong of § 2254(d)(1), is not implicated by the circumstances of this case with respect to any of Conner's claims. Similarly, as noted in Part II.A. of this Entry, findings of fact made by the state courts are presumed correct and are rebutted only by clear and convincing evidence. *Foster v. Schomig,* 223 F.3d 626, 631 (7th Cir.2000). Conner has not shown by clear and convincing evidence, nor by any evidence at all, that the recitation of evidence and factual findings by the Indiana state courts are not correct. Those findings of fact are therefore accepted for the purpose of this proceeding, and no relief or redetermination of the facts is available to Conner under § 2254(d)(2) with respect to any of his specifications of ineffective assistance of counsel.

■■■■ This leaves for consideration the "unreasonable application" prong of § 2254(d)(1), at least as to any claim decided on the merits by the Indiana Supreme Court. The Seventh Circuit Court of Appeals has explained:

An unreasonable application of federal law encompasses situations where, among other things, "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams,* 529 U.S. at 407, 120 S.Ct. 1495. An incorrect application of clearly established federal law is not necessarily an unreasonable one. *Hough v. Anderson,* 272 F.3d 878, 890 (7th Cir. 2001). As such, a federal court cannot substitute its independent judgment as to the correct outcome; rather, it must determine that a state court decision was both incorrect and unreasonable before it can issue a writ of habeas corpus. *Washington v. Smith,* 219 F.3d 620, 628 (7th Cir.2000).

*Davis v. Litscher,* 290 F.3d 943, 946 (7th Cir.2002). "The state court decision is reasonable if it is 'minimally consistent with the facts and circumstances of the case.'" *Schultz v. Page,* 313 F.3d 1010, 2002 WL 31839218 (7th Cir. December 19,

2002) (quoting *Schaff v. Snyder*, 190 F.3d 513, 522 (7th Cir.1999)).

1. *Guilt Phase.* Conner's specifications concerning the performance of his attorneys during the guilt phase of his trial include the following: (1) confusion over their respective roles; (2) belated, misguided, and inadequate investigation; (3) belated, random, and confused motion practice; (4) failure to appreciate the degree to which the defendant's mental health was at issue; (5) failure to develop a guilt phase theory; (6) failure to investigate and present available defenses, including voluntary manslaughter as to Counts I and II, factual disputes regarding Count III, and intoxication; and (7) failure to object to an allegedly prejudicial photographic array and in-court identification, and the State's closing argument.

Conner posits that his attorneys did not have a coherent theory of defense at the guilt phase. This is asserted to have been deficient performance. But the record shows otherwise; specifically, the record shows that the theory of the defense at the guilt phase was that the prosecution could not prove beyond a reasonable doubt that defendant had anything to do with the murder. This refutes Conner's argument that his attorneys rendered deficient performance. *People v. McDermott*, 28 Cal.4th 946, 123 Cal.Rptr.2d 654, 51 P.3d 874, 903 (2002).

Even if the court found otherwise with respect to the performance of Conner's attorneys at the guilt phase, the AEDPA standard commands deference to the decision of the Indiana Supreme Court on this subject (because it reached the merits of Conner's ineffective assistance of counsel claim) and prohibits habeas relief unless that decision was objectively unreasonable under the second prong of § 2254(d)(1). *Williams*, 529 U.S. at 411, 120 S.Ct. 1495.

The Indiana Supreme Court first surveyed what counsel had done in representing Conner both before the trial and during the guilt phase:

The Defense counsel arranged to have the defendant's mental condition examined, requested and received funds to hire an investigator, and hired an investigator who investigated the case. Both attorneys timely filed numerous relevant motions, including a motion to suppress the defendant's confession, one of the key pieces of evidence against him, and a motion to obtain funds for a psychiatrist, in addition to the two appointed by the court, to evaluate the defendant. The defendant has not identified any motion that was denied solely because it was not filed in a timely manner.

Several weeks before trial, defense counsel indicated to the trial court that the defense would be ready for trial on October 3, 1988, and did not consider seeking a continuance because more time was needed for investigation. Defense counsel at trial challenged the State to prove the elements of the crimes alleged and attempted to create reasonable doubt, thereby seeking acquittal upon the failure of proof. Furthermore, defense counsel subjected the State's witnesses to cross-examination and objected to the admission of evidence at trial.

*Conner II*, 711 N.E.2d at 1249. The Indiana Supreme Court then explained how the strategy of Conner's attorneys at the guilt phase was consistent with the representation provided, how a different mode of representation (responsive to Conner's allegations of deficient performance) would have been inconsistent with or would have diminished the force of the chosen strategy, and how, in particular, "counsel was not outside their bounds of discretion in deciding not to invoke an intoxication defense when, under the facts of this case and the law of Indiana, this

defense was not likely to be effective." *Id.* at 1250. This assessment was at least minimally consistent with the facts and circumstances of the case or was one of several equally plausible outcomes, and hence was not objectively unreasonable.

 Further, even if the court concluded that the Indiana Supreme Court's application of *Strickland's* performance prong was objectively unreasonable, Conner would still have to establish prejudice. To determine whether Conner was prejudiced by his attorneys' deficient performance, Conner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. The Indiana Supreme Court's determination that Conner had not met this burden was not objectively unreasonable.

 *2. Penalty and Sentencing Phases.* "Capital jurisprudence has long recognized that counsel's ability to advocate effectively during the sentencing phase is derived from adequate preparation directed specifically to the penalty phase." *Marshall v. Hendricks,* 307 F.3d 36, 99 (3d Cir.2002). In the context of a capital sentencing proceeding, the relevant inquiry is "whether there is a reasonable probability that, absent the errors, the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Strickland,* 466 U.S. at 695, 104 S.Ct. 2052. Thus, in his concurrence in *Strickland,* Justice Brennan stressed:

> Of course, "[the] right to present, and to have the sentencer consider, any and all mitigating evidence means little if defense counsel fails to look for mitigating evidence or fails to present a case in mitigation at the capital sentencing

hearing." Accordingly, counsel's general duty to investigate takes on supreme importance to a defendant in the context of developing mitigating evidence to present to a judge or jury considering the sentence of death; claims of ineffective assistance in the performance of that duty should therefore be considered with commensurate care.

466 U.S. at 706, 104 S.Ct. 2052 (Brennan, J., concurring in part and dissenting in part) (internal citations omitted).

 A defense counsel's failure to engage in an appropriate investigation of potential mitigating evidence in the punishment phase can support a claim of ineffective assistance of counsel. *Williams,* 529 U.S. at 390, 120 S.Ct. 1495 (noting that such a claim is governed by the *Strickland* test). However, a failure to investigate, develop, or present mitigating evidence is not ineffective assistance *per se. Moore v. Johnson,* 194 F.3d 586, 615 (5th Cir.1999). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. Furthermore, it has been properly explained that a federal habeas court "must be particularly wary of 'arguments that essentially come down to a matter of degrees. Did counsel investigate enough? Did counsel present enough mitigating evidence? Those questions are even less susceptible to judicial second-guessing.'" *Dowthitt v. Johnson,* 230 F.3d 733, 743 (5th Cir.2000), *cert. denied,* 532 U.S. 915, 121 S.Ct. 1250, 149 L.Ed.2d 156 (2001) (quoting *Kitchens v. Johnson,* 190 F.3d 698, 703 (5th Cir.1999)).

■ The Indiana Supreme Court identified the strategy of Conner's attorneys at the penalty phase and explained how this strategy was carried out:

The record indicates that in the penalty and sentencing phases defense counsel's strategy was to humanize the defendant, an appropriate strategic decision. Defense counsel presented opening and closing arguments and testimony from several witnesses in order to present evidence of the defendant's background, including alcohol, drug, and family problems, his relationships, his good qualities, his employment history, and his relatively minor criminal history. Defense counsel also conducted cross-examination, objected to the admission of evidence, and identified mitigating circumstances. Defense counsel requested funds and identified corrections for the pre-sentence report.

*Conner II,* 711 N.E.2d at 1251. The Indiana Supreme Court also noted that a plea for Conner's life so that experts could study him scientifically to discover how he worked and why people commit such crimes was not necessarily ineffective assistance of counsel, but "could be a reasonable strategy in making the best argument in a hard case." *Id.*

■ Conner has not shown that, absent the errors he attributes to his attorneys at the penalty phase, there is a reasonable probability that the trial court would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. The Indiana Supreme Court's conclusion on this point is not an unreasonable application of clearly established federal law.

■ *3. Summary.* To evaluate the performance of counsel for Sixth Amendment purposes, the relevant perspective is the time of trial, not afterwards when everyone knows that counsel did not succeed in avoiding the death penalty. *See Koko-*

*raleis v. Gilmore,* 131 F.3d 692, 696 (7th Cir.1997) ("A trial may be adversarial and fair even if the chosen strategy goes awry. Because counsel cannot experiment with different strategies, it is difficult in both principle and practice to know how best to proceed."). In order to prove that the assistance rendered by his defense counsel was constitutionally deficient, Conner must show that counsel's performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052. It has been noted that "only a clear error in applying *Strickland's* standard would support a writ of habeas corpus," *Holman,* 126 F.3d at 882. While such errors do occur, *e.g., Brown v. Sternes,* 304 F.3d 677 (7th Cir.2002); *Roche v. Davis,* 291 F.3d 473, 483–84 (7th Cir.2002), no such error occurred in Conner's case, and Conner has not met that burden with respect to his claims of ineffective assistance of counsel during the guilt phase and the penalty phase of his trial. The Indiana Supreme Court's decision to this effect was not "contrary to," nor was it an "unreasonable application of," clearly established federal law, and thus is impervious to federal habeas corpus relief.

**B.**

Conner contends that he was denied the effective assistance of counsel in his direct appeal by his attorney, Craig Turner. His specific contentions are that: (1) Turner failed to include counsel's arguments at trial thereby failing to discover potential claims of error relating to those arguments and precluding their review on direct appeal; (2) Turner failed to raise issues of ineffective assistance of experts, trial counsel, prosecutorial misconduct, and errors in the trial court's sentencing order; (3) the statement of facts in the appellant's brief in *Conner I* was a "dry, advocacy free

recitation"; (4) Turner failed to adequately support his arguments; (5) Turner failed to file a reply brief; and (6) cumulative prejudice from these alleged errors. The first two of these specifications were not included in *Conner II,* and thus cannot be reviewed here. *Lemons v. O'Sullivan,* 54 F.3d 357, 360 (7th Cir.), *cert. denied,* 516 U.S. 993, 116 S.Ct. 528, 133 L.Ed.2d 434 (1995); *Lostutter v. Peters,* 50 F.3d 392, 396 (7th Cir.), *cert. denied,* 516 U.S. 843, 116 S.Ct. 130, 133 L.Ed.2d 79 (1995).

■ The standard for judging a claim of ineffective assistance of counsel is the same for both trial and appellate lawyers. *Matire v. Wainwright,* 811 F.2d 1430, 1435 (11th Cir.1987). The two-part *Strickland* analysis must, therefore, be applied to Conner's appellate counsel as well. This test was correctly recognized in *Conner II* as the controlling standard. In *Conner II,* the Indiana Supreme Court did not judge the effectiveness of Conner's attorney in *Conner I* by "applying a rule that contradicts the governing law … [or making] a decision that involves a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result." *Boss v. Pierce,* 263 F.3d 734, 739 (7th Cir.2001) (citing *Williams v. Taylor,* 529 U.S. at 405–06, 120 S.Ct. 1495). Similarly, the decision in *Conner II* on this point was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. This eliminates the possibility of habeas corpus relief under the "contrary to" prong of § 2254(d)(1) and under § 2254(d)(2), and leaves for consideration whether the Indiana Supreme Court rendered an objectively unreasonable application of *Strickland* in judging the claim of Turner's ineffectiveness in *Conner I.*

Some of the specifications regarding Turner's representation of Conner in *Conner I* relate to claims which were not included in the appeal, while other specifi-

cations relate to the manner in which those that were included were presented.

■ Where a defendant claims that counsel failed to raise the correct issues on appeal, the question is whether appellate counsel failed to raise a significant and obvious issue without a legitimate strategic purpose. *Franklin v. Gilmore,* 188 F.3d 877, 884 (7th Cir.1999). Thus, we must examine the "trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mason v. Hanks,* 97 F.3d 887, 893 (7th Cir.1996). Conner has not identified claims which were clearly stronger than those presented in his direct appeal.

■ Conner attempts a slam dunk on the claim of appellate representation by arguing, in Conner's words, that the Indiana Supreme Court "effectively found, on direct appeal, that Conner's appellate counsel was ineffective" in the manner or content of arguments which were presented. This effort falls short, for in each instance the Indiana Supreme Court merely highlighted that Conner had not shown (1) prejudice from the particular circumstances, such as the trial court's denial of Conner's request for individual sequestered voir dire, and the asserted failure of trial counsel to "fully explore" prospective jurors' attitudes toward the death penalty, or (2) legal merit to certain claims, such as the particular argument that the Indiana death penalty was unconstitutional as applied in Conner's case. In *Conner II,* the Indiana Supreme Court explained that Turner's 78–page brief "challenged [Conner's] trial, conviction, and sentencing in

fifteen enumerated claims, altogether presenting twenty-four issues." *Conner II,* 711 N.E.2d at 1253. The decision in *Conner II* also disposes of Conner's criticism of the style, organization, or length of Turner's brief on behalf of Conner in *Conner I,* pointing out that Turner had challenged the propriety of the death sentence, had challenged the State's proof as to the existence of an aggravating factor, and had argued that the trial court failed to consider several mitigating factors.

The prejudice prong of *Strickland* requires petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. No aspect of Conner's challenge to Turner's representation in *Conner I* satisfies this standard, and the Indiana Supreme Court's determination to that effect in *Conner II* is not objectively unreasonable.

### C.

After he was arrested, Conner gave an incriminating statement to Indianapolis police officers Green and Stamm. He contends that this statement was involuntary and unreliable. He filed a motion to suppress the statement. A hearing was conducted on the motion to suppress, in which Conner argued that the police continued questioning him after he requested an attorney. The motion to suppress was denied. Conner's challenge to the admission of his confession was twice considered and rejected by the Indiana Supreme Court. *Conner I,* 580 N.E.2d at 219; *Conner II,* 711 N.E.2d at 1247–48.

■■■ A confession is involuntary only if there is (1) police coercion or overreaching which (2) overbore the accused's will and (3) caused the confession. *See Colorado v. Connelly,* 479 U.S. 157, 165–66, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). "[C]oercive police activity is a necessary

predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Id.* at 167, 107 S.Ct. 515. A confession is voluntary "if the totality of the circumstances demonstrates that it was the product of rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics calculated to overcome the defendant's free will." *Watson v. DeTella,* 122 F.3d 450, 453 (7th Cir.1997) (citations omitted). In determining whether a statement is voluntary, the court looks at the surrounding circumstances and the combined effect of the entire course of the officer's conduct upon the defendant. *See United States v. Polanco,* 93 F.3d 555, 560 (9th Cir.1996). In applying the totality of the circumstances test, the factors that a court should consider to determine whether an accused's confession is voluntary are the following: (1) characteristics of the accused—the defendant's age, education, intelligence level, and mental state; (2) conditions of the interrogation—the length of the defendant's detention, the nature of the interrogations, and the inclusion of advice about constitutional rights; and (3) the conduct of law enforcement officials—focusing on the use of physical punishment, including deprivation of food or sleep. *See United States v. Brooks,* 125 F.3d 484, 492 (7th Cir.1997).

■■■ The record refutes Conner's allegation that his confession was not voluntarily given. Conner's waiver of his *Miranda* rights was voluntary, knowing, and intelligent. He does not contend otherwise. As to the character of the subsequent statement he gave to police, over several hours, Conner made detailed, coherent statements to the police officers, after waiving his rights. He stated he understood his rights and confirmed his awareness of his situation and his option to

decline to answer questions or make a statement until he had spoken with an attorney. He was taken from the Indianapolis airport to police headquarters. He was given slices of pizza and a Coke. He was given coffee, took a restroom break, was moved to a room where the heating was not malfunctioning, and given, at his request, a pack of Camel cigarettes. The Indiana Supreme Court's description of these circumstances is accurate:

> Before he was questioned and gave his videotaped statement, [Conner] was advised of his constitutional rights multiple times and signed multiple written waivers of his rights. [Conner] was calm when he gave the taped statement, and he was provided with food, soft drinks, and cigarettes at his request. [Conner] affirmatively expressed his desire to speak with the detectives, testified that he was not confused or "under pressure," and did not request to speak with an attorney. There exists evidence in the record that [Conner] did not suffer from a mental disorder. Evidence also demonstrates that the detectives used the criminal code book not to manipulate [Conner] into giving a statement or to provide legal advice, but rather to answer questions asked by [Conner] and to explain the charges against [Conner], the differences among murder, voluntary manslaughter, and involuntary manslaughter charges, and the relevance of sudden heat. While the police detectives may have had somewhat differing opinions as to the sequence of events, the evidence in the record does not lead unerringly to a conclusion contrary to the trial court's decision. Even though some of the facts in [Conner's] confession may be inconsistent with facts established at trial, these inconsistencies do not render the confession unreliable or involuntary. The principal facts provided in [Conner's] confession are corroborated by other facts.

*Conner II*, 711 N.E.2d at 1247–48.

If fairly supported by the record, state court findings on subsidiary questions, such as the length and circumstances of the interrogation, and the defendant's prior experience with *Miranda* warnings, are conclusive on a federal habeas court that is asked to decide whether the confession was voluntary. *Muniz v. Johnson*, 132 F.3d 214, 219 (5th Cir.1998) (citing *Miller v. Fenton*, 474 U.S. 104, 117, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985)). Thus, on federal habeas review, a federal court has to presume that the state court's factual finding that a defendant fully understood what was being said and asked of him was correct unless the petitioner shows otherwise by clear and convincing evidence. *Valdez v. Ward*, 219 F.3d 1222, 1231 (10th Cir.2000). The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact. *See, e.g., Marshall v. Lonberger*, 459 U.S. 422, 433, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) (applying presumption of correctness to implicit finding against the defendant's credibility, where that finding was necessarily part of the court's rejection of the defendant's claim); *LaVallee v. Delle Rose*, 410 U.S. 690, 695, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973) (same).

Conner makes the point that he has been disadvantaged as to Judge Tranberg's findings in relation to the motion to suppress because only a ruling was made, unaccompanied by any findings of fact or even a statement of what reasoning was used to support the decision. There could, of course, be circumstances in which an unexplained ruling presents a maze of uncertainty as to what findings were made, and such a maze could confound a sensible

challenge to the findings. But this was not such a case. For the most part, the circumstances surrounding Conner's interrogation on January 30, 1988, were undisputed. The only point at which the evidence diverged-with Conner giving one account, and Green and Stamm giving a different account-was as to whether, at any point, Conner stated to the interrogating officers that he wished to speak with an attorney. Because this was the only point where the evidence conflicted, and because Judge Tranberg ruled in a manner which is only consistent with his determination that the account given by Green and Stamm was more credible than that given by Conner, it necessarily follows that Judge Tranberg found that Conner had not requested an attorney at any time prior to or during his interrogation by or statement to police during the evening of January 30, 1998. This court is obligated to defer to that credibility determination. See 28 U.S.C. § 2254(e)(1); *Coulter v. Gilmore*, 155 F.3d 912, 920 (7th Cir.1998). That presumption of correctness could be overcome by clear and convincing evidence, but Conner has not mustered such evidence. Additionally, while a credibility finding unsupported by the record evidence is clearly erroneous, *Green v. White*, 232 F.3d 671, 678 n. 9 (9th Cir.2000), that is not the case here.

Thus, because Conner did not request an attorney during his interrogation on January 30, 1988, because no other factor pertinent to that interrogation remotely suggests that there was coercive police activity which caused Conner's will to be overborne, and because Conner has not rebutted the presumption of correctness which applies to the trial court's finding that Conner's statement was voluntary, the admission of his statements to police during that interrogation, including the videotaped statement given late in the evening of January 30, 1988, was not error and there is no basis under § 2254(d)(1) to support Conner's habeas petition based on that admission.

### D.

 The claim of incorrect or incomplete jury instructions which is asserted here was asserted in *Conner II*, wherein the Indiana Supreme Court found that the claim had been available in Conner's direct appeal, that Conner had waived the claim by not including it in *Conner I*, and that the claim would be examined solely under the narrow strictures of Indiana's doctrine of fundamental error. *Conner II*, 711 N.E.2d at 1246. As already explained in Part II.B. of this Entry, when an Indiana appellate court invokes its doctrine of fundamental error to reach a claim in a post-conviction action it has done so only when finding a procedural default. That is the case here.

 Federal review may still be available if Conner shows cause for the default and actual prejudice or if he could demonstrate that the failure to consider his claim would result in a fundamental miscarriage of justice. *See McCleskey v. Zant*, 499 U.S. 467, 493–95, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). Conner has not shown the existence of circumstances necessary to overcome his procedural default. This conclusion rests on the following considerations.

● One means by which Conner could overcome his procedural default is by showing cause for and prejudice from the procedural default. The meaning of these terms is set forth in Part II.B. of this Entry. Apart from the question of "cause," Conner has not shown prejudice from the instruction error he alleges. Asserted instructional error under state law is generally not a basis for federal habeas relief. *See Gilmore v. Taylor*, 508 U.S. 333, 344, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993). Even so, such error

will not support a petition for federal habeas relief unless it is shown "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,'" but that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). "In evaluating the instructions, we do not engage in a technical parsing of this language of the instructions, but instead approach the instructions in the same way that the jury would—with a commonsense understanding of the instructions in light of all that has taken place at the trial." *Johnson v. Texas,* 509 U.S. 350, 368, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993) (quoting *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)). The instructions to which Conner objected in *Conner II,* when viewed in conjunction with other pertinent instructions, did not misinform the jury of its duty nor misstate the law. The Indiana Supreme Court considered the instructions as a whole, *Conner II,* 711 N.E.2d at 1247, which is the proper technique, *Cupp,* 414 U.S. at 146–47, 94 S.Ct. 396 ("A single instruction to the jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."), and in doing so explained why there was neither error in the instructions nor prejudice to Conner.

● The second means by which Conner could overcome his procedural default is by showing that this court's failure to reach the merits of his claim would result in a "fundamental miscarriage of justice." The Supreme Court has equated the miscarriage of justice standard with a claim of actual innocence, as explained in Part II.B. of this Entry. Conner's challenge to the jury instructions does not demonstrate his actual innocence, and hence does not meet the fundamental miscarriage of justice exception to the consequence of his procedural default.

In light of the foregoing, therefore, the court does not reach the merits of Conner's claim that the jury instructions given, and those not given, entitle him to a writ of habeas corpus.

**E.**

Conner contends that his right to be present at all stages of the prosecution against him was violated when there was a communication between the bailiff and the jury outside the presence of the parties and without notice to him.

▇▇▇ "The defense has no constitutional right to be present at every interaction between a judge and a juror, nor is there a constitutional right to have a court reporter transcribe every such communication." *Rushen v. Spain,* 464 U.S. 114, 125–26, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (Stevens, J., concurring in judgment); *see also Verdin v. O'Leary,* 972 F.2d 1467, 1481–82 (7th Cir.1992) (explaining that the constitutional right to presence is not implicated *per se* by a judge's *ex parte* communication with a deliberating jury). Rather, the constitutional right to presence, which derives from the Sixth Amendment's Confrontation Clause and the Due Process Clause of the Fourteenth Amendment, exists where there is a reasonably substantial relation to the fullness of opportunity to defend against the charge and to the extent that a fair and just hearing would be thwarted by the defendant's absence. *United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985) (citing *Snyder v. Massachusetts,* 291 U.S. 97, 105–06, 54 S.Ct. 330, 78 L.Ed. 674 (1934)).

▇▇▇ The respondent is incorrect in arguing that Conner failed to fairly present the federal basis of this claim to the

Indiana state courts. *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir.2001) ("The bottom line is that the task of the habeas court in adjudicating any issue of fair presentment is assessing, in concrete, practical terms, whether the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis.") (quotations omitted); *Spreitzer v. Schomig*, 219 F.3d 639 (7th Cir.2000) ("[a] 'fair presentment' of a petitioner's claims requires that a petitioner give state courts 'a meaningful opportunity to pass upon the substance of the claims [petitioner] later presses in federal court' ")(quoting *Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir.1999)). Accordingly, the claim has been properly preserved for federal habeas review. Even if the court concluded otherwise, however, the court would consider the merits of the claim. *Todd v. Schomig*, 283 F.3d 842, 849 (7th Cir.2002) (citing 28 U.S.C. § 2254(b)(2)).

▬ Conner proceeds to argue that the Indiana state courts did not adjudicate the merits of this improper contact claim, and that this sets the stage for a *de novo* determination of the claim. *See Ouska v. Cahill–Masching*, 246 F.3d 1036, 1046 (7th Cir.2001); *Braun v. Powell*, 227 F.3d 908, 916–17 (7th Cir.2000). This argument overlooks the finding of the Indiana state courts and the significance of that finding.

▬ The premise of this improper contact claim is that there was a communication of a substantive nature which occurred between the bailiffs and the jury during the jury's deliberations. This premise is contrary to the explicit findings of the trial court in the post-conviction action, which credited the testimony of the bailiffs and of a juror, Linda Carter, that no such contact occurred and that, according to Carter, any communication between the bailiff and the jury transpired after the jury's deliberations were concluded. Con-

ner states that the evidence is "overwhelmingly" contrary to this finding, but all Conner does in this regard is demonstrate that the evidence was conflicting. The test under the habeas statute is not to determine whether a state court's finding of fact is contrary to "overwhelming" evidence otherwise, but whether the habeas petitioner has rebutted by clear and convincing evidence the state court's finding of fact, which is presumed to be correct. 28 U.S.C. § 2254(e)(1). Conner has not met that rigorous burden here, where juror Carter testified precisely as the post-conviction court found, and where that finding was fully consistent with the testimony of the two bailiffs.

▬ The defendant bears the burden of proving the occurrence of *ex parte* contact with the jury. *Owen v. Duckworth*, 727 F.2d 643, 646 (7th Cir.1984). Because the finding of the Indiana courts on this matter is presumed correct and because Conner has not rebutted that presumption, the content of the communication and other details lack significance. Conner's right to be present at all stages, secured by the Sixth Amendment, was not implicated by any communication involving the jury which occurred outside his presence and without his knowledge. The Indiana Supreme Court did make this determination, and it neither constituted an objectively unreasonable application of Supreme Court precedent nor rested on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

### F.

Conner's claim that the post-conviction court improperly excluded evidence has been withdrawn in Part III of Conner's *Traverse* filed on September 13, 2001, and is not discussed further.

## G.

Conner claims that Indiana's death penalty statute violates the Eighth and Fourteenth Amendments to the United States Constitution. His specific arguments on this point are the following:

(1) the permissive language of IND.CODE § 35–50–2–9(c) makes consideration of mitigating factors optional;

(2) the qualifying language of IND.CODE § 35–50–2–9(c)(2) and (6) precludes consideration of mitigating circumstances;

(3) IND.CODE § 35–50–2–9(c) fails to define or explain "mitigating circumstances";

(4) the statute fails to require an instruction defining "mitigating circumstances" and providing guidance in their consideration;

(5) the statute has the potential of misleading juries to consider any criminal history, no matter how minor, aggravating rather than mitigating;

(6) IND.CODE § 35–50–2–9(d) fails to limit consideration of guilt phase evidence to that which is relevant to charged aggravation and mitigation;

(7) the statute could be interpreted as requiring mitigating circumstances to be found unanimously;

(8) the statute does not require the jury to find that the aggravating circumstances outweigh the mitigating circumstances beyond a reasonable doubt;

(9) IND.CODE § 35–50–2–9(e) and (g) provide for a mandatory death penalty upon a finding of certain facts;

(10) IND.CODE § 35–50–2–9(e) fails to require the articulation of all mitigation considered;

(11) the statute does not provide for meaningful appellate review; and

(12) cumulative constitutional violation.

All of these claims, with the exception of the claim of a cumulative constitutional violation were raised at some point in state court, but only the two which were asserted in *Conner I* have been properly preserved for consideration in this proceeding.

*1. Properly Preserved Arguments.* In *Conner I*, Conner raised five arguments as to why the Indiana death penalty statute is unconstitutional. Of these five arguments, the only two raised in Conner's habeas petition are (1) the statute's lack of guidance to a jury in determining when aggravating factors outweigh mitigating factors, and (2) the statute's insufficiency in detailing appellate review or its failure to require comparative proportionality review.

Regarding Conner's claim that the jury's lack of guidance in determining when aggravating factors outweigh mitigating factors, the Indiana Supreme Court concluded in *Conner I* that Indiana's death penalty statute:

allows a defendant wide latitude in presenting evidence that might pursuade [sic] a jury to recommend against the death penalty even though such evidence would not be relevant to enumerated factors set forth in the statute. A jury which has just heard the evidence of guilt or innocence during the guilt phase of the trial is well equipped to weigh aggravating versus mitigating factors in determining whether to recommend for or against the imposition of the death penalty. We have previously rejected the claim that the statute does not sufficiently guide the jury in weighing such factors. *Fleenor v. State* (1987), Ind., 514 N.E.2d 80, 91–92, *cert. denied* (1988), 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed.2d 158. There is nothing present in this case which causes us now to accept such an argument.

*Conner I*, 580 N.E.2d at 218.

Just as the Indiana Supreme Court noted its previous determination that the challenged statute gave sufficient guidance to a jury, the Seventh Circuit

Court of Appeals has made the same determination.

This Court, of course, seeks to ensure that the application of the death penalty statute is neither arbitrary nor discriminatory. *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), sets forth three criteria to determine whether a state has appropriately limited a sentencer's discretion. The statutory scheme must furnish clear and objective standards, specific and detailed guidance, and an opportunity for rational review of the process for imposing the death sentence. *Id.* at 427, 100 S.Ct. at 1764 (Stewart, J., plurality opinion); *Stringer v. Black*, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992) (explicitly applying the Godfrey principle to a "weighing" state).... Indiana's list of aggravating and mitigating factors provides fixed, objective and uniform discretionary constraints to guide death penalty sentencing decisions.

*Schiro v. Clark*, 963 F.2d 962, 969 (7th Cir.1992), *aff'd.*, 510 U.S. 1215, 114 S.Ct. 1341, 127 L.Ed.2d 688 (1994); see also *Harris v. Alabama*, 513 U.S. 504, 511, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995) (explaining that "the hallmark of the analysis is not the particular weight a State chooses to place upon the jury's advice, but whether the scheme adequately channels the sentencer's discretion so as to prevent arbitrary results.") Moreover, "specific standards for balancing aggravating against mitigating circumstances are not constitutionally required," *Zant v. Stephens*, 462 U.S. 862, 875 n. 13, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), as long as the death penalty statute adequately channels the jury's sentencing discretion. *Id.* at 877, 103 S.Ct. 2733. The weighing process is not a factual determination or an element of an offense; instead, it is a moral or legal judgment that takes into account a theoretically limitless set of facts and that cannot be reduced to a scientific formula or the discovery of a discrete, observable datum. *See California v. Ramos*, 463 U.S. 992, 1008, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) ("Once the jury finds that the defendant falls within the legislatively defined category of persons eligible for the death penalty, ... the jury then is free to consider a myriad of factors to determine whether death is the appropriate punishment.").

In Conner's case, the trial court judge instructed the jury in Instruction Number 12 that:

The Jury may recommend the death penalty only if it finds:

1. That the State has proved the existence beyond a reasonable doubt of at least one of the aggravating circumstances alleged in their charging information, and,

2. That any mitigating circumstances that exist are outweighed by the aggravating circumstances.

The reasonable doubt standard applied in the sentencing hearing is the same as that used in the trial stage of these proceedings.

The foregoing instruction is set forth on page 240 of the Record of Proceedings filed in *Conner I*. This instruction satisfied, along with the statute on which it was based, the constitutional requirement of guiding the jury's discretion to prevent an arbitrary result. It did likewise with respect Judge Tranberg's later decision, which is discussed in more detail in Part IV.I. of this Entry.

The Indiana Supreme Court reasonably concluded that Indiana's death penalty statute was not constitutionally deficient in providing adequate guidance to the jury regarding the balancing of aggravating circumstances and mitigating circumstances.

As to the second death penalty statute challenge which was properly preserved in the state courts, Conner claims that the

statute does not sufficiently detail appellate review or require comparative proportionality review.

▆▆▆▆▆ Conner is correct that a state's capital sentencing scheme must "channel a [capital] sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and 'make rationally reviewable the process for imposing a death sentence.'" *Lewis v. Jeffers*, 497 U.S. 764, 774, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) (quoting *Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S.Ct. 1759, 64 L.Ed.2d 398(1980)). Conner's argument on this point is that the appellate review mandated by IND.CODE § 35–50–2–9(h) fails to ensure the exercise of careful scrutiny of the process. The language of the statute and the history of its application, however, show otherwise.

▆▆▆ Article VII, Section 4, of the Indiana Constitution provides that appeals from judgments imposing a death sentence are to be brought directly to the Indiana Supreme Court. The challenged statute, IND.CODE § 35–50–2–9(h) (1988), specifies that a death sentence is subject to automatic review by the Indiana Supreme Court, is to be given priority over all other cases, and that a death sentence is not to be carried out until the Indiana Supreme Court has completed its review. This statute requires appellate review, but "does not prescribe a standard of review." *Bivins v. State*, 642 N.E.2d 928, 957 (Ind. 1994). Nonetheless, the Indiana Supreme Court's review of a death sentence

> "includes consideration of whether the procedure before the jury and the court by which the penalty has been imposed accords with the dictates of the sentencing statute, and whether the evidence renders the sentence appropriate."

*Id.* (quoting *Baird v. State*, 604 N.E.2d 1170, 1181–82 (Ind.1992), *cert. denied*, 510 U.S. 893, 114 S.Ct. 255, 126 L.Ed.2d 208 (1993)); *see also Lowery v. State*, 547 N.E.2d 1046, 1059 (Ind.1989)("Having found the trial court did not improperly reach its judgment imposing the death penalty, it is now the duty of this Court under the Constitution and statutes of Indiana, Ind. Const. Art. VII, § 4; IND. CODE § 35–50–2–9(h), to determine whether in our judgment such penalty is appropriate for this defendant under the circumstances of this case."), *cert. denied*, 498 U.S. 881, 111 S.Ct. 217, 112 L.Ed.2d 176 (1990). This interpretation of the statute, which has been applied consistently by the Indiana Supreme Court when applicable, "puts these words in the statute as definitely as if it had been so amended by the legislature." *Winters v. New York*, 333 U.S. 507, 514, 68 S.Ct. 665, 92 L.Ed. 840 (1948).

The Indiana Supreme Court explained that the "statute's requirement that this Court specifically review the imposition of the death penalty provides for adequate appellate review and it is for this Court to properly apply constitutional law in conducting such review" and that the "failure of the statute to detail the nature of that constitutional review does not render the statute unconstitutional." *Conner I*, 580 N.E.2d at 219. As noted in *Schiro*, moreover:

> Not only has Indiana enumerated clear, objective and specific standards for imposing the death penalty, but it has also required the sentencing judge to make written findings with respect to those factors in order to facilitate appellate review. IND.CODE § 35–4.1–4–3 (Burns 1979). As a result of these safeguards, the Indiana death penalty statute will not lead to arbitrary or discriminatory results generally or in Schiro's case.

*Schiro v. Clark*, 963 F.2d at 969.

The foregoing shows that in both structure and in practice, including in Conner's case, the appellate review mandated by

IND.CODE § 35–50–2–9(h) is not and was not constitutionally deficient. The Indiana Supreme Court reasonably concluded that Indiana's death penalty provides for constitutionally sufficient appellate review.

*2. Arguments Not Properly Preserved.* Nine of the twelve claims raised in Conner's petition regarding Indiana's death penalty statute were raised for the first time in post-conviction proceedings. In *Conner II*, the post-conviction court found that each of Conner's nine challenges to the constitutionality of Indiana's death penalty statute were procedurally defaulted because they were available yet not raised in his direct appeal and because they did not amount to fundamental error. *Conner II*, 711 N.E.2d at 1257. These challenges to Indiana's death penalty statute are barred by procedural default. Conner argues that the imposition of waiver and procedural bars prevents meaningful appellate review, but this argument could be made in the face of any claim of procedural default and begs the question of cause and prejudice by positing the asserted merits of a defaulted claim as a sufficient reason for overcoming the consequence of that default and reaching the merits. This is not the law.

In addition to those claims not raised in the petition for post-conviction relief, Conner did not raise his claim of cumulative effect resulting from alleged constitutional violations in any state court and accordingly, that claim is also procedurally defaulted. As set forth in Part II.B. of this Entry, a claim that is procedurally defaulted is barred unless the petitioner can demonstrate cause for the default and the consequence of actual prejudice or a showing that a fundamental miscarriage of justice would be caused by the failure to consider the claim. Here, Conner has not shown cause, prejudice or that failure to consider the cumulative effect argument would result in a fundamental miscarriage of justice.

## H.

Conner's claim that the post-conviction court improperly denied funds for a polygraph has been withdrawn in Part III of Conner's *Traverse* filed on September 13, 2001, and is not discussed further.

## I.

■■ Conner argues that his sentence of death was improper because the trial court used an improper aggravating circumstance and failed to consider mitigating evidence.

A challenge to the imposition of the death penalty was presented in *Conner I*. It was rejected, with the Indiana Supreme Court noting first that "[t]he aggravating circumstances alleged to support the death penalty were that, at the time of killing Moore and Voge, Conner had committed another killing." *Conner I*, 580 N.E.2d at 221. Specifically, the evidence is that at the time of Moore's murder, Conner had murdered Wentland, and that at the time of Voge's murder, Conner had murdered Wentland and Moore. These prior killings by Conner, in the cases of Moore's murder and Voge's murder, qualify under Indiana law as aggravating circumstances. *See* IND.CODE § 35–50–2–9(8). The Indiana Supreme Court then stated:

> In reviewing the record of the penalty phase of the trial as well as the court's sentencing order, we hold that the trial court properly considered both aggravating and mitigating circumstances and properly imposed the death penalty in accordance with the Indiana act.

*Id.*

Conner failed to raise in his direct appeal the specific claims set forth in his habeas petition to the effect that the sen-

tence was improper as a result of improper aggravating factors and failure to consider mitigating circumstances on direct appeal. In *Conner II*, the Indiana Supreme Court affirmed the denial of relief on this claim, explaining that it found "no compelling argument presented to justify departure from [its] well-established rules regarding forfeiture and *res judicata.*" *Conner II*, 711 N.E.2d at 1259.

▋ Conner has not shown the presence of circumstances sufficient to overcome the consequence of his procedural default in not presenting a more detailed challenge to the imposition of the death penalty in *Conner I*. Apart from that, however, the trial court's instructions to the jury show that it was fully aware of the obligation to consider mitigating circumstances. The trial court was presented with other information, biographical information about Conner, but this information was not of the nature which compelled its treatment as mitigating. The trial court's sentencing order complied with the requirements of Indiana law and with those of due process.

▋ Even if there had been error in the sentencing process in the trial court, the review by the Indiana Supreme Court in this case cured that error.

> When an "invalid" aggravating factor is considered in sentencing in a "weighing" state, a state appellate court must either reweigh the aggravating circumstances against the mitigating circumstances, engage in a meaningful harmless error analysis, or remand for resentencing.

*Hough v. Anderson*, 272 F.3d at 906 (citing *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), and *Sochor v. Florida*, 504 U.S. 527, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992)). The Indiana Supreme Court exercised its authority under state law to "independently reweigh the proper aggravating and miti-

gating circumstances at the appellate level." *See Lambert v. State*, 675 N.E.2d 1060, 1065 (Ind.1996), *cert. denied*, 520 U.S. 1255, 117 S.Ct. 2417, 138 L.Ed.2d 181 (1997). After doing so, the state supreme court found that death was an appropriate sentence and affirmed Conner's sentence.

### J.

▋ Conner argues that the State failed to disclose a report prepared by Dr. Paul Frederickson on April 7, 1988, regarding psychological testing he performed on Conner. This claim was raised in the Indiana courts for the first time in the post-conviction action. The Indiana Supreme Court expressly found that the existence of Dr. Frederickson's report was information available to Conner in his direct appeal through the exercise of reasonable diligence, and that this claim was procedurally forfeited for failure to raise it on direct appeal. *Conner II*, 711 N.E.2d at 1246. Conner argues that this was another aspect in which his attorneys failed to render constitutionally adequate representation. The merits of this claim will be considered, notwithstanding procedural default. *Todd v. Schomig*, 283 F.3d 842, 849 (7th Cir.2002) (citing 28 U.S.C. § 2254(b)(2)).

▋ Due process requires the prosecution to disclose favorable evidence that is material to the defendant's case. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

> Under *Brady v. Maryland, supra,* and its progeny, the prosecution has an affirmative duty to disclose evidence that is both favorable to the defense and material to either guilt or punishment. The suppression of such evidence deprives the defendant of a fair trial and thus violates due process. To establish a *Brady* violation, a defendant must demonstrate that (1) the prosecution sup-

pressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material to an issue at trial.

*Boss v. Pierce*, 263 F.3d 734, 739–40 (7th Cir.2001) (internal citations omitted).

■ The pertinent part of the *Brady* analysis required in this case rests on the second element, the element of suppression. The government will not be found to have suppressed information if that information was available to the defense through the exercise of reasonable diligence. *United States v. Morris*, 80 F.3d 1151, 1170 (7th Cir.), *cert. denied*, 519 U.S. 868, 117 S.Ct. 181, 136 L.Ed.2d 120 (1996); see also *United States v. Dimas*, 3 F.3d 1015, 1019 (7th Cir.1993) (evidence was not "suppressed" under *Brady* if the defendants could have obtained the evidence themselves with reasonable diligence); *United States v. White*, 970 F.2d 328, 336 (7th Cir.1992) ("Evidence cannot be regarded as 'suppressed' by the government when the defendant has access to the evidence before trial by the exercise of reasonable diligence").

The Indiana Supreme Court reviewed the circumstances under which notice of Dr. Frederickson's report and the psychological testing done by him was first communicated to Conner's attorneys. This occurred no later than at a competency hearing held on May 4, 1988. *Conner II*, 711 N.E.2d at 1246. The information in that report and the basis for Dr. Frederickson's opinion were available to Conner and his attorney from that moment forward. The report's significance, moreover, was something of which they were fully aware because the information surfaced in the context of the trial court's determination of Conner's competency to stand trial. The State of Indiana did not "suppress" Dr. Frederickson's report or the facts that he had performed psychological testing on Conner or that his re-

port had been considered by the psychiatrists in forming their opinions.

■ Even if the court concluded that Dr. Frederickson's report had been suppressed by the State, Conner's claim under *Brady* would fail.

The third element of a *Brady* analysis focuses on the question of prejudice, because the suppression of exculpatory documents does not cause a constitutional violation unless the documents are material. The Supreme Court has explained that the "touchstone of materiality is a 'reasonable probability' of a different result.... The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Moreover, materiality "is not a sufficiency of evidence test. A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." *Id.* at 434–35, 115 S.Ct. 1555. Materiality is to be evaluated in light of the cumulative effect of the undisclosed evidence. *Id.* at 436, 115 S.Ct. 1555.

The non-disclosure (or non-discovery, more aptly understood) of Dr. Frederickson's report was not material to Conner's defense at either the guilt or penalty phases of the trial. Specifically, Dr. Frederickson's report stated that Conner "demonstrated normal intellectual ability" and "shows no enduring cognitive impairment." Dr. Frederickson's report further stated that Conner had never suffered from a psychotic disorder and that "the probability that [Conner] ever suffered a serious lapse in reality contact to the point of psychosis, is negligible." These circumstances show that the report would not

have been helpful to Conner in establishing either his incompetence to stand trial at that time or to any effort to establish a mental health factor in mitigation at the penalty phase of the trial. The absence of that report in the hands of Conner's attorneys, therefore, does not show that Conner's trial was unfair. On the contrary, Connor received "a trial resulting in a verdict worthy of confidence."

### K.

Conner's claim that the cumulative effect of errors in the state courts entitles him to relief was withdrawn in Part III of Conner's *Traverse* filed on September 13, 2001, and is not discussed further.

### V.

Conner's prosecution, trial, conviction, and sentencing have received exhaustive review, both in this action for habeas corpus relief and in the Indiana state courts. Conner's conviction and sentence withstood challenge in the Indiana courts, and thus a presumption of constitutional regularity attaches to them. *See Farmer v. Litscher*, 303 F.3d 840, 845 (7th Cir.2002) (citing *Parke v. Raley*, 506 U.S. 20, 29–30, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992)); *Milone v. Camp*, 22 F.3d 693, 698–99 (7th Cir.1994) ("Federal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law").[1] Conner has not overcome that presumption in this case. "A defendant whose position depends on anything other than a straightforward application of established rules cannot obtain a writ of habeas corpus." *Liegakos v. Cooke*, 106 F.3d 1381, 1388 (7th Cir.1997). No such established rules entitle Conner to relief in this case. Accordingly, his petition for a writ of habe-

as corpus must be **denied** and this cause of action **dismissed with prejudice.**

The stay of execution heretofore entered is **terminated.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

### JUDGMENT

The court, having this day made its Entry,

**IT IS THEREFORE ADJUDGED** that the petitioner take nothing by his petition for a writ of habeas corpus and this action is **dismissed with prejudice.**

---

1. Obviously, this is not a presumption related to AEDPA, but is "the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights." *Parke v. Raley*, 506 U.S. at 29, 113 S.Ct. 517 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).